Van Benthuysen and another *against* Crapser.

VAN BEN-
THUYSEN
v.
CRAPSER.

THIS was an action of covenant, on an agreement for the sale of a lot of land. The cause was tried before the *Chief Justice*, at the *Duchess* circuit, in *September*, 1810. A verdict was taken for the plaintiff, subject to the opinion of the court, on the following case.

Articles of agreement were made between the plaintiffs and defendant, the 30th *March*, 1799, by which the plaintiffs *agreed to sell and convey, by a good warranty deed of conveyance, at the reasonable request of the defendant*, a certain lot, &c.; " *for which* the party of the second part (the defendant) covenanted, promised, and bound himself, his heirs and assigns, to pay to the parties of the first part (the plaintiffs) the sum of four dollars, *New-York* currency, per acre, in the term of six years from the date; that is, the one half in three years from the date, and the remainder in three equal annual payments thereafter, with the legal interest annually on the whole, from the 1st day of *May* (then) next."

On the 12th of *November*, 1808, the plaintiff executed, in due form of law, a deed of conveyance to the defendant, his heirs and assigns, in fee-simple, of the premises mentioned in the agreement, which deed contained the usual covenants on the part of the grantors, to wit, covenants of seisin, for quiet enjoyment, against encumbrances, for further assurance, and a general covenant of

A. covenanted on the 30th of *March*, 1799, to convey to B by a good warranty deed, at the reasonable request of B., a certain lot of land; and "for which B. covenanted to pay to A. a certain sum of money, one half in three, and the other half in 6 years." The lot was under a mortgage, dated in *January*, 1799, and which was registered at the time the contract was made, which mortgage was not discharged of record until *August*, 1809, but the certificate of discharge had been given in *February*, 1808. In 1803, or 1804, B. had demanded a deed of A., which he refused, saying it was not in his power to give a deed, as the lot was under mortgage. In *November*, 1808, A. tendered to B.

a deed with all the usual covenants and warranty, which B. refused to accept ; and in an action of covenant brought by A. against B. for the money agreed to be paid, it was held, that the refusal of A. to convey, on the ground of his inability to give a good title, was a default of which B. might avail himself as a defence against the action; that after such refusal, B. was not bound to tender the money, nor to accept the deed afterwards tendered to him.

If a seller will not make an assurance when reasonably demanded, he loses the bargain, and the purchaser is not bound to wait until he is able to convey; and it seems, that after a continued neglect and inability of the seller for six years subsequent to a request and refusal to convey, neither a court of law nor equity would interfere to enforce the performance of the agreement.

warranty, and was duly acknowledged before a master in chancery.

On the 4th of *February*, 1809, this deed was, in due manner, tendered to the defendant, at his usual place of residence, and the original articles of agreement at the same time shown to him; and notice was, at the same time, given to him that the premises described in the deed were free and clear from all encumbrances whatsoever, and payment of the purchase money, according to the agreement, was then demanded of the defendant.

The defendant admitted that the agreement shown to him was the counterpart of the one in his possession, but refused to receive the deed or pay the money; and the present action was commenced the 29th of *March*, 1809.

It appeared that the plaintiffs had executed a mortgage, the 26th of *January*, 1798, to one *Thurman*, for two large tracts of land, one of which included the lot in question, which mortgage was registered the 6th of *February*, 1799, and was afterwards taken up and cancelled. The certificate of discharge was dated the 4th of *February*, 1808, and duly proved the 28th of *August*, 1809, and the registry of the mortgage discharged the 29th of *August*, 1809.

It was proved, that about seven years before the trial, the defendant, in a conversation with one of the plaintiffs, demanded a deed for the lot in question; and it was answered, that it was not in the power of the plaintiffs to give a deed for the lot, as it was covered by a mortgage to *Thurman*.

It appeared that the plaintiff, of whom the deed was demanded, was indebted to the defendant for more money than the price of the land, and the defendant urged a settlement between him and the plaintiffs of all dealings. The defendant did not pretend to have a demand against both plaintiffs, nor did he tender any money when he demanded a deed; but said that if, upon a set-

tlement, any money should be found due to the plaintiffs for the land, he would pay it immediately. Similar conversations between the defendant and the same plaintiff took place subsequently, at two different times. The defendant was a man of property and credit.

*P. W. Radcliff*, for the plaintiffs, contended, 1. That the covenants were mutual and independent, and that the defendant was liable, at all events, for the purchase money. He cited 1 *Saunders*, 320. note 4. *Willes*, 157. note *a*. 2 *Hen. Black.* 389. 2 *Johns. Rep.* 208. 272. 388. 5 *Johns. Rep.* 78.

2. That if the covenants were not independent, the plaintiffs having tendered a performance of the covenant on their part, before the action was brought, were entitled to recover.

A mortgage *registered* is notice to all persons;\* and so the parties must be presumed to have entered into the contract with full knowledge of the existence of the mortgage; and it was evident also, that the defendant intended to rely on the covenant of warranty to be inserted in the deed.

\* 2 *Johns. Rep.* 510. 613.

A mortgage is considered by courts of equity as a mere security.†

It is sufficient that the party has a good title at the time of performance, though he had none at the time of the contract.‡ In *Clute* v. *Robison*,§ it was held, that if the party covenanting to sell and convey, has a good title at the time of the coming in of the master's report, or of the decree, it is sufficient. Notwithstanding, then, the mortgage was existing at the time of the contract, the plaintiffs, at the time the deed was tendered, had, and now have, a perfect title.

† 1 *Johns. Rep.* 590. 4 *Johns. Rep.* 42.

‡ *Powell*, 266, 267.
§ 2 *Johns. Rep.* 595. 5 *Co.* 21.

A covenant cannot be discharged by *parol*;¶ nor can the mere lapse of time, in this case, discharge the covenant. A purchaser is not discharged from his contract, merely because the vendor says he is not ready to per-

¶ 2 *Wils.* 376.
6 *Co.* 44. a. 8 *Johns. Rep.* 364. 367.

form, unless the purchaser, at the same time, tenders a performance on his part.

*Slosson*, contra, contended, 1. That the covenants were dependent. He cited 1 *Fonbl.* 382. 1 Ld. *Raym.* 662. 1 *Salk.* 122. 4 *Term Rep.* 761. *Cowp.* 56. *Doug.* 684. 688. 1 *East*, 619. 6 *Term Rep.* 571. 668. 1 *Hen. Black.* 270.

2. If the vendor cannot, when called upon at the time, make a good title, the purchaser may, afterwards, set up the want of title in defence;* and here the plaintiffs were called upon for the deed, seven years before the commencement of the action, and had not, for near ten years, a clear title. The defendant had a right to consider the contract as at an end.

A purchaser will never be compelled to accept a doubtful title, and pay the purchase money.† He has a right to insist on a clear, undoubted, and perfect title.

And if the vendor is not ready at the day appointed, with the title deeds, no action lies against the purchaser, for the non-performance of his agreement.‡

*Per Curiam.* It does not seem to be requisite to determine whether the covenants between the parties were or were not independent, because, admitting them to have been independent, the question still arises whether the defendant is not discharged from his covenant by the refusal and inability of the plaintiffs to convey upon request. A party is not to continue always bound by a single, independent covenant. He may be discharged by the default of the other party. To understand the sense of the contract, we must look at the whole instrument. The tender of a deed by the plaintiffs, in 1809, did not help them, provided the defendant had been already discharged from the contract.

* 1 *Esp. Cas.* 184, 185. 2 *Esp. Cas.* 640. *Sug. Law of Vend.* 250, 251.

† 2 *P. Wms.* 198. 1 *Ves.* jun. 56. and *Powell on Contracts*, 34.

‡ *Sug. Law of Vendors*, 246.

This tender was nearly ten years after the date of the covenant, and the case states, that about seven years before the trial, and which must have been in the year 1803, and nearly six years before the tender, the defendant demanded a deed of one of the plaintiffs, who replied, that it was not in the power of the plaintiffs to give a deed, as the land was covered by a mortgage. This refusal to convey upon request, and on the ground of inability to convey a good title, was a default which the defendant might avail himself of, and which he has not waived by any subsequent act. No tender of payment was shown at the time of this request, nor was this necessary, for the plaintiffs did not rest the refusal upon that ground, but on their inability to perform the contract, and such being the fact, a tender would have been useless. At the time of the execution of the covenant, and for ten years afterwards, the lands were encumbered by a heavy mortgage, and the plaintiffs were unable to convey a good title, as their covenant undoubtedly purported. Is not such refusal and inability a valid defence? The defendant was not bound to accept of the deed when the plaintiffs tendered one nearly six years afterwards, unless he was to remain perpetually liable, and the plaintiffs had their whole life-time to perform their covenant. This would be a hard and unreasonable construction, and against established principles. In *Legate* v. *Hockwood*, (2 *Chan. Cas.* 5.) and which was as early as the reign of *Charles* II. the lord chancellor declared, that if a man buys land, and the seller will not make an assurance, when reasonably demanded, he shall lose the bargain, for the party ought not to be perpetually bound, without having a performance. And in the late case of *Thompson* v. *Miles*, (1 *Esp. N. P.* 184.) Lord *Kenyon* advanced the same doctrine, that if a party sells an estate, and cannot make a title when called upon for it, the defendant may set up against the plaintiff that want of title. The inability and refusal enables the buyer, as

he says in another place, (2 *Esp. N. P.* 640.) to consider the contract at an end. After a continued neglect and inability on the part of the plaintiff, for six years, subsequent to a request and refusal to convey, it is not probable that a court of equity would interfere and decree a performance. (1 *Fonbl.* 384. note *e.*) The general principle which has been mentioned, is recognised equally at law and in equity. Judgment must therefore be rendered for the defendant.