## LACY, TERRELL & CO. v. ROCKETT.

1. Before the passage of the act of 1846, the filing of a plea *puis darrein continuance*, tacitly superseded all other pleas previously filed, and the plaintiff should not have demurred, because the defendant was not entitled to a trial on the latter; but should have presented the question to the court, on suggestion or motion, and if the decision was adverse to him, he should have excepted, and thus raised for a revising tribunal the effect of a plea *puis darrein continuance* upon the previous pleadings in the cause.

2. The bankrupt act of 1841, in virtue of the decree of bankruptcy, divests the bankrupt of all property and rights of property, except as therein provided, and declares that all suits pending to which he is a party shall be prosecuted or defended by the assignee to their final conclusion, in the same way, and with the same effect, as they might have been by the bankrupt himself: consequently, the assignee must be made a party to the litigation which may be pending in favor of, or against the bankrupt, or it cannot progress to a trial.

3. The assignee in bankruptcy may be made a party by motion, or perhaps by *scire facias* to a suit in which the bankrupt was a party when he was declared such. And *perhaps* where the assignee in a proper case fails to come in as a plaintiff, the defendant may suggest the plaintiff's bankruptcy, and upon the production of the decree, the court may order the assignee to make himself a party within a limited time, and in default thereof, the suit to abate for want of prosecution: but however this may be where the fact of bankruptcy is not controverted, it is competent for the defendant to plead *in bar* to an action by the *bankrupt himself*, the decree declaring the plaintiff to be a bankrupt. The effect of this plea may be avoided by the assignee's making himself a party; but if he replies, and the issue is found against him, or he demurs and his demurrer is overruled, and he does not plead further, judgment will be rendered for the defendant.

4. Where the plaintiff consents to receive an incomplete plea, or a plea in short according to the usual practice, which would be an available defence if the sketch or outline were put in form, it cannot be held bad on demurrer.

5. A plea by the defendant that the plaintiff was declared a bankrupt *pendente lite* need not alledge any thing in respect to the jurisdiction of the court in which the proceedings in bankruptcy were had; for it will be intended that these were in the proper tribunal.

6. *Quere.* Is it not a good plea that some of the plaintiffs, all of whom were a partnership, were declared bankrupts *pendente lite*?

Lacy, Terrell & Co. v. Rockett.

Writ of Error to the County Court of Jefferson.

THE plaintiffs in error declared against the defendant on a bill of exchange for $400, of which he was both the drawer and indorser.   The bill was addressed to, and accepted by T. W. Rockett, dated at Elyton, 25th January, 1842, and payable at ninety days after date.

The defendant pleaded—1. *Non-assumpsit.*   2. The "bankruptcy of the plaintiffs."   3. *Puis darrein continuance*, that each of the persons composing the firm of Lacy, Terrell & Co., since the suing of the writ, on the — day of ——, one thousand eight hundred and forty ——, in the district court of the United States holden at Tuskaloosa, filed his petition in bankruptcy for the benefit of the act of Congress of 1841, establishing a uniform system of bankruptcy throughout the United States; and afterwards, on the —— day of ——, in the year of ——, were by that court decreed bankrupts according to the provisions of the act then in force : and thereby, and in virtue of the act, all the plaintiffs' interest, (if any they had,) in the bill, passed to Edward F. Comegys, the assignee in bankruptcy for the middle district of Alabama : this he is ready to verify.   4. *Puis darrein continuance*, the said Robert Lacy and John D. Terrell have by the district court of the United States held at Tuskaloosa, on the — day of ——, in the year ——, been decreed bankrupts according to the act of Congress in such case provided; and have since, according to the provisions of the act, received a certificate of discharge from all their liabilities; and by the decree all the right and interest of Robert and John D. to, and in the bill declared on, passed to, and became vested in E. F. Comegys, assignee in bankruptcy for the middle district of Alabama : this he is ready to verify, &c.   To each of these pleas the plaintiffs demurred, their demurrers were overruled, and judgment rendered for the defendant.

W. S. MUDD, for the plaintiffs in error, insisted that the demurrers to the first and second pleas should have been sus-

tained, because these were waived by the third and fourth pleas. [2 Por. Rep. 386.] The second plea is also bad, because it is wanting not only in form, but does not state a substantial defence. [4 Porter's Rep. 232; 5 Ala. Rep. 451.]

The third and fourth pleas are bad, because it is not stated that the matter of them happened since the last continuance, and on what day the defence arose, [1 Chitty's Plead. 699;] because they do not alledge that E. F. Comegys was appointed by the court assignee in bankruptcy; because the matter they alledge, if available, can only be good in abatement, and should have been so pleaded; because the assignee might permit the action to progress in the plaintiffs' names—the act only requiring him to prosecute and defend; because they do not present matter of defence to the action. If the assignee allows the plaintiffs to recover a judgment, no one else can object; for if the judgment is satisfied, the defendant will be discharged. [5 Ala. Rep. 135; 1 Chitty's Plead. 14–25; Archb. Civ. Plead. 47.]

The third plea is bad for repugnancy—it alledges that the plaintiffs filed their petition in 1840, and that the bankrupt act was passed 19th August, 1841; and all of them are bad in other respects. [5 Hill's Rep. (N. Y.) 317–327.]

W. S. ERNEST, for the defendant. A bankrupt cannot prosecute an action in his own name, and the defendant may plead the fact of bankruptcy specially in bar. Where one of several partners is declared a bankrupt, the assignee must join with the solvent partner in an action upon a liability to the firm. [Chit. Plead. 23, 24; Story on Part. 445, *et post;* 5 Cranch's Rep. 289.]

COLLIER, C. J.—The third and fourth pleas were filed in 1843, and are not controlled in their effect upon the previous pleadings by the act of February, 1846, which provides " that hereafter, where a plea *puis darrein continuance* shall be pleaded, it shall not be held to be a waiver of other pleas to the merits before pleaded," &c. Previous to this enactment, the filing of a plea *puis darrein continuance* tacitly superseded all others previously filed, without the action of the court, unless they themselves were defective. But the ques-

tion of the waiver of the first and second pleas, we incline to think cannot be raised on demurrer. If a defendant insists upon having the benefit of all his pleas, and he is sustained by the court, the plaintiff should except, and thus present to a revising tribunal the effect of a plea *puis darrein continuance* upon the previous pleadings in the cause. But if we were to hold that the act cited was applicable, the plaintiff would not be in a better condition, if either the third or fourth pleas were available as a bar. In that event, he would not be prejudiced by overruling the demurrer to the plea of *non-assumpsit*; for the judgment against him upon the other pleas would estop him from trying an issue of fact, and put an end to the cause.

In considering the third and fourth pleas, it may be well to notice the bankrupt statutes of England, and the decisions upon them so far as pertinent, in connection with our own enactments upon the subject. The 12th § of the 6 Geo. 4, ch. 16, in conformity to the provisions of the 13 Eliz. ch. 7, § 2, vests, by virtue of the commission and the statute, a power in the commissioners over all the bankrupt's real and personal estate, proceeds to direct them by the 63d § to assign to the assignees all the personal estate of, and the debts due to the bankrupt. By this section it is said to be imperative upon the commissioners to convey the personal estate and debts due, to the assignees. [Eden's Bank. L. 224.] So that it would seem it is not the suing out of the commission in bankruptcy and the appointment of commissioners which passes the bankrupt's estate to the assignees. Under these statutes it has been held, that if the plaintiff in an action at law become bankrupt, the action does not abate, but the assignee must proceed in the name of the bankrupt till either an interlocutory or final judgment is obtained. In 1 T. Rep. 463, Buller, J., said, "the rule is, that the assignees cannot make themselves parties to the record in any intermediate stage of the proceedings, but it must be immediately after judgment, though an interlocutory judgment is sufficient for that purpose." [Eden's Bank. L. 347.] For any debt due to the bankrupt, and for injuries to his property previous to his bankruptcy, the action must be commenced in the names of the assignees. But if the action be commenced by the bankrupt before his bankruptcy, the assignees may either

proceed in that action or commence a new one. If they continue the suit, they must proceed in the bankrupt's name to judgment, when, and not sooner, they may make themselves parties to the record by *scire facias*. [2 Archb. Prac. 93, 160, 300, and cases there cited.]

The bankrupt act of the United States passed in 1800, it was decided, consolidated the decisions of the English statutes of bankruptcy; consequently, the English decisions on the subject are applicable in its construction. [3 Mass. Rep. 511; 5 Ib. 249; 6 Johns. Ch. R. 266. See also 1 Yeates' R. 399; 1 Root's Rep. 139; 1 Mass. Rep. 135; 1 Binn. R. 263.] The act of 1841 was intended to be exceedingly clear and simple in its provisions, and much less complicated and expensive in its execution. The third section declares that all the property and rights of property, of every bankrupt, except as hereinafter provided, who shall by a decree of the proper court be declared to be a bankrupt within this act, shall by mere operation of law, *ipso facto*, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment or other conveyance whatsoever; and the same shall be vested by force of the same decree, in such assignee as from time to time shall be appointed by the proper court for this purpose, &c.; and all suits at law or in equity then pending, in which such bankrupt is a party, may be prosecuted or defended by such assignee to their final conclusion in the same way, and with the same effect, as they might have been by such bankrupt.

The provisions of this section are very explicit in substituting the rights of the assignee to the rights of the bankrupt, and in conferring the right to prosecute or defend all suits pending at the time of the decree of bankruptcy. By divesting the bankrupt of the legal right to what he is seeking to recover, it would seem that the remedy was also gone, and that no action could be commenced or maintained which was not authorized by some exception to the general terms employed. This conclusion is not weakened by the authority conferred upon the assignee to prosecute or defend suits brought by or against the bankrupt; but this latter provision shows that the assignee must himself become a party to the pending litigation, in order that it may progress to a trial.

Lacy, Terrell & Co. v. Rockett.

If, after stripping the bankrupt of his estate, it was intended to allow the prosecution or defence to be conducted in his name, it would have been easy, and perfectly natural to have so expressed it in the act. Such an extension of terms, we think, cannot be justified by construction. In Fisher v. Vose 3 Rob. Rep. (Louis.) 457, it was said, where a party to a suit pending in a State court applies to be declared a bankrupt under the act of Congress of 1841, the proceedings must be suspended for a reasonable time, to enable him to file the decree, when the assignee must be made a party. As soon as the decree in bankruptcy is pronounced, the bankrupt in relation to all actions for and against him, except such as the statute prescribes, is legally dead, and can only be represented by the assignee.

The questions then are, can the failure of the assignee to become a party be taken advantage of by plea, and does either the third and fourth pleas warrant the judgment for the defendant. In providing that the vitality of the action shall not be lost if the assignee elects to prosecute it, the act necessarily confers the right to revive, according to the usual mode of revival, where suits are suspended by the right in controversy devolving upon some person who is not a party. It would then be competent to make the assignee a party by motion, or perhaps *scire facias*, upon producing the decree in bankruptcy, which confers on the assignee the bankrupt's right of property, and the remedy to make it available. Where the assignee does not pursue this course, I think the defendant may suggest the plaintiff's bankruptcy, and upon his showing that such a decree has been rendered against him, the court may order that the assignee make himself a party within a limited time, or that the suit abate for want of prosecution. [See Lord Huntingtower v. Sherborn, cited from 3 Am. L. Mag. 428.] This mode of proceeding seems to me most conformable to the usual practice in analogous cases. My brethren however, are of opinion, that conceding this practice to be regular, where the fact of bankruptcy is not controverted, it is altogether competent for the defend-

ant to plead that the plaintiff who is prosecuting the suit was declared to be a bankrupt by the proper court, subsequent to its institntion. And as such a decree is a perpetual bar to the *bankrupt himself*, the fact may be pleaded as a bar to the action. [See 15 East's Rep. 622 ; 1 Murp. Rep. 161.] But the assignee may avoid the effect of such a plea, by submitting to make himself a plaintiff. If however, he takes issue upon it, and it is found against him, or he demurs and his demurrer is overruled, and he does not plead further, judgment must be entered for the defendant. As this is a mere question of practice, from the decision of which, according to the views of my brethren, no inconvenience can result, I acquiesce in their opinion. If the assignee elects to bring a new action, the judgment against the bankrupt upon the third and fourth pleas cannot be pleaded in bar.

In respect to the completeness of the pleas, it may be remarked, that it is stated in each of them, that they were pleaded "in short by consent." By this we understand that they were intended to be nothing more than a mere outline, or sketch of the defence they respectively set up, and that the plaintiff assented to this mode of pleading. This is the view which we have repeatedly taken of such pleas, and following our previous decisions, we cannot affirm that those we are considering are defective. If the outline or sketch was completed by putting the plea in form, we have seen that the bar would be perfect. Although it has been held, that in pleading a bankrupt's discharge, the facts necessary to give the court jurisdiction of the proceeding in bankruptcy should be set forth, (Sackett v. Andross, 5 Hill's Rep. 327 ;) yet a plea by the debtor, that his creditor was declared a bankrupt *pendente lite* need alledge nothing in respect to the jurisdiction, for it will be intended that the creditor filed his petition in the proper court.

As the third plea was a good bar to the action, and will support the judgment for the plaintiff, it is scarcely necessary to consider whether the fourth, which alledges the disability of only two of the defendants can be sustained. We

will however refer to Story on Par. 483-4, in which it is said, that actions at law, after the bankruptcy of one of the partners, must be brought jointly in the names of the solvent partners, and the assignee in bankruptcy who succeeds equally to his rights of action, as well as his rights of property.

We have only to add, that the judgment of the county court is affirmed.