### EYSTER *v.* GAFF et al.

PRESUMPTIONS — *of performance of official duty.* A trustee held certain lands, whereon was situate a town site, for the use of the occupants ; and, by the terms of the statute creating the trust, the execution thereof was directed to be according to certain prescribed regulations : *Semble,* that a conveyance by the trustee, reciting that the grantee is entitled to the premises, under the provisions of the statute creating the trust, referring to such act by its title, raises a presumption of compliance with the regulations.

EVIDENCE — *original record of a conveyance. Semble :* It is admissible to receive the original record of a conveyance of lands ; production of a certified copy is not essential.

MORTGAGE — *evidence of subsisting debt. Semble :* Production of the mortgage, where this recites an indebtedness, is sufficient *prima facie* to establish

the continued existence of such indebtedness ; the accompanying note or bond need not be produced.

BANKRUPTCY OF MORTGAGOR — *effect on mortgagee's estate.*  The bankruptcy of the mortgagor is no bar to an ejectment by mortgagee against a third person not connected with the assignee in bankruptcy, even though such ejectment be without permission of the bankruptcy court, the assignee never having assumed possession of, or intermeddled with, the estate.

The assignee in bankruptcy is not bound, in all cases, to assume possession of mortgaged lands pertaining to the estate, and no legal presumption exists of such possession, either actual or constructive.

## Appeal from District Court, Arapahoe County.

AN act of congress, passed on the 23d of May, 1844 (5 Stat. at Large, 657), authorized the entry of lands of the public domain whereon should be situated any town, by certain officials named, " in trust for several use and benefit of the occupants thereof, according to their respective interests ; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or territory in which the same is situated."   The act contained a proviso that any act of the trustees, not in conformity to the rules and regulations prescribed, should be null and void.

The act of May 28, 1864 (13 Stat. at Large, 94), extended the above act, so as to authorize the probate judge of Arapahoe county to enter certain lands named, whereon was situated the city of Denver, and provided the execution of its provisions should be controlled in all things by the provisions of the former act.

The legislature of the territory, by an act passed May 11, 1864, prescribed rules and regulations for the execution of the trusts arising under an entry made in pursuance of the first-mentioned act and any amendments thereto.   This act directed that the official making the entry should, within thirty days thereafter, give notice thereof in a manner pre scribed, and that every person claiming to be an occupant, or entitled under the trust, should, within ninety days after

the first publication of notice of the entry, deliver into the office of the official charged with the trust, a statement in writing, containing an accurate description of the particular parcels or lots wherein he or she claimed an interest, and the specific right or interest or estate which he or she claimed to be entitled to receive. Those failing to observe this requisition were declared forever barred, etc.; provision was made for the settlement of adverse claims; the apportionment of the cost and expenses of the entry, and directing conveyance to be made to the claimant after ninety days from the first publication of notice of the entry.

Thomas and James W. Gaff brought ejectment for certain lots, part of the Denver town site; the declaration counting for the premises as the plaintiff's estate in fee.

Upon the trial, which was had before the court without a jury, it was shown that one George W. McClure had resided upon the premises, and was the owner of certain improvements thereon, from 1862 to 1868.

It was also shown that one Hall, probate judge of Arapahoe county, had entered the lands described in the act of congress, on the 6th day of May, A. D. 1865, in pursuance of the provisions of that act.

The plaintiffs also gave in evidence, from the files of the probate judge's office, a statement, subscribed by McClure, and filed in that office on May 25, 1865, by which McClure applied for a conveyance of the lots in question, under the provisions of the latter act of congress, stating that he " claimed the same as the owner thereof," but not otherwise particularizing the estate or interest claimed. It was shown, against the defendants' objection, that this paper accorded in form with those generally used by claimants of lots in this town site.

Plaintiffs also produced a book, admitted to be one of the books of records of the office of the recorder of the county, and offered to read therefrom the record of a conveyance of the premises in controversy, purporting to have been executed by Hall, probate judge, to McClure, on the 11th of August, A. D. 1865, and which recited the act of con-

gress, the entry by the probate judge, and that McClure was entitled to the premises, under the provisions of the act, but not otherwise showing compliance with the provisions of the territorial legislation. The defendant objected to this record: 1. Because the original record, and not a certified copy, was produced. 2. Because the deed did not, upon its face, show a compliance with the regulations prescribed by the territorial legislature; but the evidence was received, and this was assigned for error.

Plaintiffs also gave in evidence, over the defendant's objection, a mortgage of these and other premises, executed by McClure to themselves, and expressed to be for securing the payment of certain moneys, payable in installments, and evidenced by sundry promissory notes; the mortgage bore date February 2d, A. D. 1867, and the last installment of the mortgage debt matured in nine months thereafter. No evidence was given of the non-payment or continued existence of the mortgage debt; and this was the ground of the defendant's objection. The reception of this evidence was also assigned for error.

It was also shown, that on the 11th December, 1868, these plaintiffs exhibited in Arapahoe district court their bill for the foreclosure of this and another mortgage, of which they were the assignees; that a decree of foreclosure and sale was entered on the 1st July, 1870; that a sale of the premises had been had under this decree on the 27th August, 1870, and confirmed October 27 following, at which the plaintiffs were the purchasers, and that the premises were conveyed to the plaintiffs, in pursuance of this sale, on the 29th of May, 1871.

It was also shown on the part of the defendant, by an exemplification out of the supreme court of the territory, which then exercised jurisdiction in bankruptcy, that McClure, on the 10th day of May, 1870, filed his petition to be declared a bankrupt (the accompanying schedules setting forth the property in controversy, as part of the bankrupt's estate, incumbered by the mortgage given in evidence in this cause, and the plaintiffs, as secured cred-

itors, for the mortgage debt); that he was adjudged bankrupt, May 11, 1870; that a warrant issued to the marshal, by which he was required to summon the creditors therein named, including the present plaintiffs, among others, to attend the first meeting of creditors; that said warrant was returned by the marshal, duly served; that publication of notice of the first meeting of creditors was also made; and that at this meeting, John Meechling, Esq., was elected assignee of the bankrupt's estate; that he accepted the appointment on the 4th June, 1870; and received the assignment of the bankrupt's estate on the 9th of June; that on the 30th of June, 1870, he had filed in the foreclosure cause of *Gaff et al.* v. *Eyster*, a certificate of his appointment as assignee, but, so far as appeared, he had never appeared therein, or sought to become party thereto; nor had he in any way sought to intermeddle with any of the mortgaged premises, except that, upon the 2d day of August, 1870, after final decree in the foreclosure suit, he had filed in the supreme court, sitting in bankruptcy, a petition for an order directing certain tenants, including the defendant below, to pay the rents which might be due to the estate of McClure; no action was ever taken upon this petition, nor, so far as appeared, was the attention of the court in bankruptcy called to it.

The plaintiffs below, so far as appeared, had never proved their claim, in the bankruptcy court, nor was the consent of that court obtained to the proceedings in the foreclosure suit, subsequent to the bankruptcy, nor to the ejectment suit.

The district court found the defendant guilty, and the plaintiffs entitled in fee, and gave judgment accordingly; the defendant below excepted to this judgment, and assigned it for error.

The record did not show that, in the court below, any evidence had been given of the defendant's possession of the premises. It was orally admitted, however, that such evidence had been given, and plaintiff in error stipulated not to object upon the ground of this omission.

Mr. C. S. EYSTER, *pro se.*

Mr. J. Q. CHARLES, for appellees.

Mr. Justice BELFORD dissented.

WELLS, J. Passing by all questions as to whether the assignee of McClure was or was not a necessary party to the bill to foreclose, and as to whether the decree given therein, after the bankruptcy, and without joining him, is or is not void, it appears to us that the appellees were properly permitted to recover in the court below, upon their mortgage alone. This results necessarily, as we think, from the nature of the mortgagee's estate, and the relation of the assignee thereto. The lien and estate of the mortgagee is preserved, notwithstanding the bankruptcy, and the assignee succeeds to the right which the mortgagor had before bankruptcy. If the assignee has, in person, or by another, taken actual possession of the estate, the mortgagee cannot disturb that possession by an action brought after the initiation of the bankruptcy proceedings; in such case the possession of the assignee is the possession of the court in bankruptcy, and if the mortgagee would enter, he must first obtain the permission of that court. But in many cases he is not entitled to such possession; *e. g.*, when the estate assigned consists of realty, subject to mortgage, and the mortgagee has entered before the bankruptcy. In such case the mortgagee unquestionably may retain the possession which he has lawfully acquired. So there are other cases where, though technically entitled to the possession, he is not only not bound to assume it, but his duty is to leave it where the bankruptcy finds it, *e. g.*, where the estate assigned is subject to incumbrance exceeding its value. *Lambert's case*, 2 B. R. 138. Therefore, where the estate is assigned subject to mortgage, it ought not to be said, that as matter of law, nothing being shown as to the fact, the assignee had either the actual or constructive possession. And in the present case the appellant had not in any way connected himself with the assignee, nor shown

even that the assignee had ever assumed or attempted to assume the possession of the premises. If, as for aught we know is the case, the assignee disclaims the estate, the plaintiffs certainly are entitled thereto, and they ought to be permitted to proceed against the defendant, who appears to be a mere stranger in the ordinary courts; notwithstanding the bankruptcy.

The judgment of the district court is

*Affirmed.*

BELFORD, J., dissenting. When I have the misfortune to differ from this court, I would, under ordinary circumstances, silently acquiesce in its opinion. It is well known to the profession that this court unanimously voted to reverse this judgment at the last term. Since that time I find that my associates have changed ground. My convictions have, however, undergone no modification. They may be mistaken and unwarranted, but still they are sincerely entertained, and should not be abandoned simply because others have received a degree of judicial illumination, which thus far has failed to enlighten my path. And inasmuch as I think this cause cannot be maintained, I think it not improper to review at length the whole case. The first error assigned is the action of the court in admitting the filing made by McClure on the lots in controversy. The second error goes to the introduction of the deed from Hall to McClure. I will consider these two assignments together. It appears from the bill of exceptions that McClure, the mortgagor, was in the possession of these lots from 1862 until 1868. The mortgage was executed while he was in such possession. It is a well-settled principle of law that a mortgagor will not be permitted to dispute a title derived under his mortgage, nor allege any thing in opposition to a claim founded on it. By the mortgage he professes to convey, and thereby avers, that he held an estate in fee simple. An ancient rule of the common law, founded on clear and immutable principles of justice, forbids a party from alleging in contradiction of his own deed or in opposi-

tion to a claim founded on such deed, that he was guilty of falsehood and had no estate or interests in the premises at the execution of the deed  Granting that the filing was defective, and the deed not in conformity with the law, nothing is clearer than that McClure is estopped from availing himself of any defects which may exist in the instruments under and through which he derived his title.  And while this is true of the mortgagor, it is equally so of a person who enters as his tenant subsequent to the execution of the mortgage. . *Addison* v. *Crow*, 5 Dana, 282 ; *Den* v. *Vanness*, 5 Halst. 102.

It is equally well settled that in. an action of ejectment for the recovery of mortgaged premises against the mortgagor, or one entering under him, subsequent to the date of the mortgage, the plaintiff need not trace his title back of the mortgage. *Pollock* v. *Maison*, 41 Ill. 516.  On the trial below, the plaintiffs, after introducing the mortgage, rested their case, and the defendant, with a view to show that the mortgage was ineffectual, offered in evidence the decree of foreclosure, and resisted the recovery on the mortgage, on the ground that it was merged and extinguished by the decree. In the courts where this question has arisen, considerable conflict prevails.  In the case of *The People* v. *Bebee*, decided in 1847, and reported in 1 Barb. 379, it is held that a decree of a court of equity for the foreclosure of a mortgage extinguishes the lien of the mortgage, and it is further held that after a sale of the mortgaged premises under the decree of foreclosure, neither the mortgage nor the decree is any longer a lien upon the premises.  In the case of *Butler* v. *Miller*, 1 Denio, 407, it was held that, when a party having a note secured by a mortgage takes judgment on the note, the judgment operates as a merger and extinguishment of the debt and mortgage.  This same case coming before the court of appeals again (1 Comst. 500), the court alludes to the previous decision, and questions its soundness.  They say that, although it is clear that the notes were merged in the judgment by operation of law, it does not certainly follow that the mortgage would be extinguished ; the debt is not

yet satisfied; the notes may have been canceled, but the debt was not; until that is done, the mortgage, whether upon real or personal property, should be allowed to stand. The rule that securities of a higher nature extinguish inferior securities will be found to apply to the state or condition of the debt itself, and means no more than this, that when an account is settled by a note, a note changed to a bond or a judgment taken upon either, the debt, as to its original or inferior condition, is extinguished or swallowed up in the higher security, and that all securities by which such inferior condition was evidenced lose their vitality. The court states: "It has never been applied, and never should be, to the extinguishment of distinct securities, whether superior or inferior in degree; these are to be canceled by satisfaction of the debt or voluntary surrender alone." In Pennsylvania, it has been repeatedly held that when a judgment is taken on a bond or note secured by a mortgage, and the land sold under the judgment, the lien of the mortgage is destroyed. *West Branch Bank* v. *Chester*, 11 Penn. St. 282; *Welliard* v. *Norris*, 2 Rawle, 56; *McCall* v. *Lennox*, 9 S. & R. 303; *Cronister* v. *Weise*, 8 Walls, 215; *Douley* v. *Hays*, 17 S. & R.    ; *Clark* v. *Stonley*, 10 Barr, 497. The decisions in Pennsylvania are made to rest on the ground that, when a sale is on a judgment on the bond for which the mortgage was given, the entire estate of inheritance was the subject of sale. The mortgage is regarded as a mere charge on the land. The estate in the land is the same thing as the money due upon it. A mortgage, though in form a conveyance of the land, is, in substance, but a security for the payment of the money, and the debt being paid, or in any other manner extinguished, the lien of the mortgage is gone. The transaction is regarded as nothing else in substance but a debt to which all securities are merely accidental adjuncts, and which have no existence but by their union with the subject to which they are attached. The equity of redemption is, therefore, not a mere trust, but in equity is the veritable estate, and when sold to satisfy the debt secured by the mortgage, the purchaser

takes the blended estates of the mortgagor and mortgagee. In Kentucky it has been repeatedly decided that an execution on a judgment at law for a mortgage debt cannot be levied on the equity of redemption of the mortgaged property, and that a sale of the equity under such an execution possesses nothing to the purchaser; this, of course, does not apply to sales when made under judgments in favor of general creditors. *Goring* v. *Streve*, 7 Dana, 65 ; *Swigert* v. *Thomas*, id. 220 ; *Bronston* v. *Robinson*, 4 B. Monroe, 142 ; *Waller* v. *Tate*, id. 531.

It is not a matter of question that a creditor who takes a mortgage to secure a debt by bond, or otherwise, has three remedies, either of which he is at liberty to pursue until his debt is satisfied. He may bring an action of debt upon the bond, or he may put himself in possession of the rents and profits of the land mortgaged by means of ejectment, or he may foreclose the equity of redemption and sell the land to satisfy the debt. I am clearly of the opinion, however, that a mere judgment on the bond in an action of debt is not a discharge of the lien of the mortgage, nor has a simple decree of foreclosure that effect; but where the mortgaged property has been sold under the decree to satisfy the debt, then, if the decree is a valid one, the mortgage has ceased to be available. By the sale of the mortgaged property, that is accomplished, which the mortgagor and mortgagee, at the time of the execution of the mortgage, intended ; that the property should stand as security for the debt, and if necessary be resorted to, as a fixed security, out of which to obtain payment. By such sale the land is converted into money and applied to the mortgaged debt, and the purchaser takes the title. If the proceeds amount to more than the debt, the surplus goes to the mortgagor; and if they are insufficient to pay the debt, the balance unpaid may be recovered from the mortgagor. And this is consistent with the contract, the rights and interests of the parties, where the mortgagor becomes the purchaser at such sale, two titles in the land become united in the same person, in the same right, and at the same time as

mortgagor and mortgagee. The owner of the decree and mortgage is alike the owner of the land. The mortgage has served its purpose when the sale takes place, and can no longer be used as a foundation on which an action of eject- ment can be permitted. While the lien of the mortgage is thus defeated by the sale, it has been uniformly held that the title acquired by the sale is carried back, by relation, to the date of the execution of the mortgage. It has also been repeatedly decided, where mortgaged property is sold under decree of foreclosure, and has failed to satisfy the debt, that the property in the hands of a purchaser under such sale is not liable to another exposure. *Ex parte Stevens,* 4 Can. 133; *Henson* v. *Drygert,* 8 Johns. 257; *Ridgeway* v. *Longaker,* 18 Penn. St. 219. It now becomes necessary to inquire whether the decree ren- dered in the foreclosure suit is a valid one. The pro- ceedings to foreclose the mortgage were begun some eigh- teen months prior to McClure's discharge as a bank- rupt; the decree, however, was not entered until a consid- erable time afterward. It is manifest, from the provisions of the bankrupt act, that when a voluntary petitioner in bankruptcy files his petition in due form, he becomes *eo instanti* a bankrupt, so far as any interference with the property named in his inventory is concerned, and such property is brought into the bankruptcy court, and placed in its custody and under its protection. When the property rests in the hands of the assignee, there is an impassable chasm between the bankrupt and his estate; he has no further interest in or control over it. It is in the custody of the law for the benefit of his creditors. He is as abso- lutely dead to the estate as he would be if buried out of sight. At the time the decree was entered, the equity of redemption was out of McClure and in the hands of the assignee. Ordinarily speaking, when the interest of a defendant in the subject of the litigation becomes vested in others *pendente lite,* without an actual abatement of the suit, a distinction is very properly made between the trans- fer of that interest by the mere voluntary act of the defend-

ant, as in the case of a sale or assignment in the ordinary course of business, and a transfer of that interest by operation of law, as upon an assignment in bankruptcy or under insolvent laws. In the first case the complainant is not bound to make the assignee a party, but in the last case the assignee, who has become such by operation of law, has a right to be heard, and must be made a party before the suit can be further prosecuted. *Cleveland* v. *Sedgwick*, 7 Paige, 290; *Dens* v. *Thorne et al.*, 3 Johns. 544; *Springer* v. *Vanderpool*, 4 Edw. Ch. 362; *Lowry* v. *Morrison*, 11 Paige, 329; Story's Eq. Pl., § 158; *In re Frezelle*, 5 N.B R. 122. It could not be contended that a complainant, after the death of the respondent, could proceed to enter a decree affecting his property without making those parties on whom the estate was cast. Before another step could be taken, it would be necessary to revive the suit in the name of the administrator or heirs, and this principle is equally applicable to the case at bar, inasmuch as the assignee stands in the same relation to the bankrupt that the administrators or heirs sustain to a decedent. *Herndon* v. *Howard*, 9 Wall. 664; *Lacy* v. *Rickett*, 11 Ala. 1002; *Swepson* v. *Rouse*, 6 Am. Rep. 736. It is the constant rule of courts of equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject-matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled to obey it, and also that future litigation may be prevented; and hence, also, it is a general rule in equity that all persons materially interested, either legally or beneficially, in the subject-matter of the suit are to be made parties to it, either as plaintiffs or defendants, so that there may be a complete decree which shall bind all. In this case the very property, to wit, the equity of redemption which the complainants were seeking to foreclose, was, at the date of the decree, in the hands of the assignee. He was not made a party, was not bound by the decree, and lost no interest by virtue of the same.

It is strenuously insisted on by the counsel for the appel-

lees, that every act of a court of competent jurisdiction shall be presumed to be rightly done until the contrary appears, and that this court must presume that the assignee was made a party to the foreclosure proceedings. It is only necessary to say, in reply, that such a presumption would be in the face of the wholere cord. Not an order, interlocutory or otherwise, made in the case refers in any manner to the assignee. Violent and extraordinary would be the conduct of a court that would have the temerity to announce that the rights of an individual were swept away or barred by a decree which did not purport in any manner to affect them. It is further contended that the foreclosure suit was a proceeding *in rem,* and not *in personam;* that no personal decree was or could have been rendered against McClure. All this may be conceded, and the difficulty will still remain. Whatever rights McClure had at the commencement of the bankruptcy proceedings passed to his assignee. The bankruptcy proceedings antedate the decree. When that was made, Meechling was the owner of the equity of redemption. This suit was brought to foreclose that. McClure then had no interest which could be affected, and the assignee was not before the court. Speaking on this subject, CLIFFORD, J., in the case of *Buchanan et al.* v. *Smith,* 16 Wall., remarks : " Until the debtor commits an act of bankruptcy it is doubtless true that any creditor may lawfully sue out any proper process to enforce payments of debts overdue, and may proceed to judgment, execution, seizure and sale of his property, but it is equally true that the appointment of an assignee, under a decree in bankruptcy, relates back to the commencement of the bankruptcy proceedings, and that the instrument required to be executed, under the bond of the judge or register, assigns and conveys to the assignee all the *estate,* real and personal, of this bankrupt, including equitable as well as legal rights and interests and things in action as well as those in possession which belonged to the debtor at the time the petition in bankruptcy was filed." In the case of *Winslow* v. *Clarke,* 47 N. Y. 263, RAPALLO, J., says :

" At the time of the commencement of the foreclosure suit, the equity of redemption was vested by operation of law in the plaintiff (the assignee), and he was not made a party to the proceedings. The foreclosure, therefore, was of no effect as to him, and his equity of redemption remained in full force." That the assignee must be made a party, I think is clear from the following decisions: Fisher on Mortgages, 191 ; *Randall* v. *Mumford*, 18 Vesey, 424 ; *Ex parte Berry*, 1 Dickens, 81 ; *Montieth* v. *Taylor*, 9 Vesey, 615. In the case of *Russell* v. *Clark, executor*, 7 Cranch, 69 ; 2 Curtis, 459, MARSHALL, C. J., holds that assignees in bankruptcy are indispensable parties to a bill against the bankrupt and persons to whom he conveyed property in trust before he was decreed a bankrupt." If assignees could be dispensed with, new opportunities for the practice of frauds would be opened up. It would be an easy matter for one desirous of defrauding certain unsecured creditors, to place on his estate mortgages in favor of some associate in his villainy, exceeding in amount the value of his property, with the understanding that, when the property was sold, there should be a division of the proceeds. In the furtherance of such a transaction, the mortgagor would not be inclined to interpose obstacles when a suit looking to the sale of the property was instituted in court. The assignee stands as the representative of all the creditors, and he should be made a party, in order that, if desirable, he may contest the validity of all deeds executed by the debtor, and assert in himself, for the benefit of the creditors generally, a right to the whole fund. And so believing, I find no difficulty in holding, both on principle and authority, that the decree in the foreclosure suit is simply a nullity.

It then becomes important to inquire whether the appellees can maintain an action of ejectment on the mortgage, or to state it more precisely, can a creditor, during the pendency of bankruptcy proceedings, enforce a lien against the estate of the bankrupt in a State or territorial court. In the case of *Den* v. *Stockton*, 7 Halst. 322 ; *Williams* v. *Brownston*, 3 Gilm. 611, and *Kruse* v. *Kripp*, 12 Ill. 104, it is laid down

that a mortgagee does not divest himself of the right to maintain an action of ejectment by filing a bill to foreclose, procuring an order of sale, and accepting the sheriff's deed for the premises. If the sheriff's sale is valid, the mortgagee, having become the purchaser, has a right to recover by virtue of the purchase and conveyance. If the sale is not valid, his mortgage still remains, and this rule must be applied to this case, unless some controverting exception, growing out of the peculiar situation of this property, intervenes to arrest this action. Is there such an exception? Of the power of congress to pass laws on the subject of bankruptcy there is, and can be, no question, and when such a law is enacted it is paramount, binding alike on Federal and State tribunals. The commencement of proceedings in voluntary bankruptcy transfers to the national courts the jurisdiction over the bankrupt's estate and all parties and questions connected therewith. The manifest object of the act of 1867 was to provide speedy proceedings, and the ascertainment and adjustment of all claims and rights in favor of or against the bankrupt's estate in the most expeditious manner consistent with justice and equity. Cases pending in State courts at the date of the bankruptcy, where there is nothing in them which requires the equitable interference of the bankruptcy court to prevent any mischief or wrong to other creditors under the bankruptcy, or any waste or misapplication of the assets, are not infrequently allowed to proceed and be consummated by proper decrees and judgments, especially when there is no suggestion of any fraud or injustice. Suits instituted subsequently are seldom, if ever, entertained by State tribunals. Jealous of their own jurisdiction, they have exhibited a commendable zeal in avoiding all occasion for conflict with federal tribunals. In a late case the supreme court of Michigan declined to entertain a cause affecting bankrupt's estate, on the ground that it was instituted subsequently to the bankruptcy, and that the jurisdiction of the national courts is exclusive. Speaking to the same point, the supreme court of Massachusetts, in *Clifton* v. *Foster*, 103 Mass. 233, say: "Upon

the institution of proceedings in bankruptcy and the appointment of an assignee, all the property of the bankrupt passes into the custody of the courts of the United States, and cannot, while such proceedings are pending, be taken out of their custody upon any subsequent suit in a State court, pending the bankruptcy proceedings, therefore no order could be made on this petition for the sale of the real estate to satisfy the lien of the petitioners." The same doctrine is announced in California. *Wilson* v. *Capuro*, 41 Cal. 551. In the case of *Whitridge* v. *Taylor*, 66 N. C. 275, it is held that the jurisdiction of the courts of bankruptcy is superior and exclusive for the purposes contemplated, except as is otherwise provided for in the statute. In this case the mortgagee was allowed to foreclose his mortgage, for the reasons that the adjudication in bankruptcy had taken place in the district court of Maryland, and because that court had no extra-territorial jurisdiction. It also appears that the assignee accepted service, and was willing that the case should proceed. The late Chief Justice CHASE, *In re Winne*, 4 N. B. R. 5, says : " By the bankrupt act all the rights and all the duties of the bankrupt, in respect to whatever property not expressly excluded from the operation of the act, he may hold under whatever title, whether legal or equitable, and however incumbered, pass to and devolve upon the assignee at the date of the filing of the petition in bankruptcy, and all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a State court after petition is filed, though, in case where jurisdiction had been previously acquired by State courts, of a suit brought in good faith to enforce a valid lien upon property, such jurisdiction will not be divested." It would seem clear, from the foregoing authorities and numerous others which might be cited, that a territorial court is without jurisdiction in cases arising subsequent to the bankruptcy.

It seems to me that the true theory of the bankrupt act is, to stop all things at the date of the bankruptcy and to divide

the wreck of the man's property as it stood at that time, and that this division and distribution is to take place under the directions, not of thirty different State courts, but of the district court of the United States. It is claimed by the appellees, "that nothing in the bankrupt act shall be construed to annul, destroy or impair any lien, mortgage, or other securities on property, real or personal, which may be valid by the laws of the States respectively, and which may not be inconsistent with the provisions of this act," and that thereby such liens and mortgages and other securities are saved from the operation of the bankrupt's act, and, by inference, from the jurisdiction of the national courts. I will answer this in the language of Judge STORY in *Ex parte Christy*, 3 How. 316: "There is no doubt that the liens, mortgages and other securities within the provision of this act, so far as they are valid by State laws, are not annulled, destroyed or impaired under the proceedings in bankruptcy; but they are to be held of equal obligation and validity in the courts of the United States as they would be in the State courts. The district court sitting in bankruptcy is bound to respect and protect them. But this does not and cannot interfere with the right of the district court to inquire into their validity, extent," etc. Again, he says, p. 319: "It would be easy to put cases in which the exercise of this authority may be indispensable on the part of the district court, to prevent irreparable injury, or loss, or waste of the assets, without adverting to the case at bar. * * Let us put the case of numerous suits pending or to be brought into the State courts, upon different mortgages by the mortgagees upon various tracts of land or other property, some of the mortgages being upon the whole of the tracts of land, some upon a part only, some of them involving a conflict of independent titles, some of them involving questions as to the extinguishment, or satisfaction, or validity of the debts, and some of them involving very doubtful questions as to the construction of the terms and extent of the conveyances. If all such suits may be brought by the separate mortgagees in the different State tribunals, it is most obvious that as

each of the State tribunals may or must proceed upon the single case only before it, the most conflicting decisions may be made, and gross and irreparable injustice may be done to the other mortgagees as well as to the general creditors under the bankruptcy. All this, however, is completely avoided by bringing the whole matters in controversy between all the mortgagees before the district court, making them all parties, and thus enabling the court to marshal the rights and priorities and claims of all parties, and by a sale and other proceedings, after satisfying the just claims of all the mortgagees, applying the residue of the assets, if any, for the benefit of the general creditors." It is claimed, however, that the rights of the mortgagee are impaired when you compel him to go to the district court for relief, and that the act must be unconstitutional. In reply, I refer the counsel to the able and lucid opinion of BALDWIN, J., appended to *Ex parte Christy's* case, where he fully concedes the power of congress over the whole subject. The act has not left the party without a remedy, quite as broad and efficacious as that afforded by State laws.

In bankruptcy, the mortgagee may come to the court either as legal or as equitable mortgagee, and have his security sold and turned into money, or, if the court shall be satisfied that the property pledged is not of greater value than the debt, the mortgagee can have it turned over to him, and under the order of the court be placed in immediate possession. What better or more speedy remedy can be furnished by any other tribunal. There is another view of this case equally fatal to the claim of appellees. If this property is in the custody of the bankruptcy court, then no other court can interfere with it. *Wesivall* v. *Sampson*, 14 How. 66; *Ex parte Fisher*, 2 Story, 160 ; *In re Vogel*, 2 B. R. 138 ; *Angell* v. *Smith*, 9 Vesey, 335 ; *Russell* v. *East Anglian R.R. Co.*, 3 Mc. & G. 104. It is claimed, however, that the appellant is a stranger to this bankruptcy proceeding, and is in no position to question the rights of the appellees. One thing is true ; he is in possession of this property, and whatever rights he has will be affected by the judgment

rendered. Ejectment is not only a suit where questions of title may be tried, but also where rights of possession may be involved, and if the appellant has no rights of property he has one right common to all citizens, that of remaining in possession until ousted by a court of competent jurisdiction.

It is conceded, however, by my associates that if Eyster was the tenant of the assignee, the suit could not be prosecuted, for the reason that the possession of Eyster would be the possession of the bankruptcy court. The fallacy of the whole argument upon which their opinion rests, consists in the fact that it overlooks the vesting of this estate in the bankruptcy court by operation of law. When McClure was adjudged a bankrupt, the law itself carried the estate into that court. And being there, who has the right to interfere with it in any form except the assignee? The position of the assignee is analogous to that of a receiver. He is an officer of the court, created by the law for the purpose of managing an estate, to which the judge, on account of the pressure of judicial duties, is not supposed to be able to give his personal attention. The proper course to be pursued in reference to property in that condition, by any one who claims title, is to come into the court and ask that his title be inquired into and settled. And if he holds a judgment or mortgage which is a prior lien, and is desirous of enforcing it against the estate after it has been taken into the care and custody of the court, he must obtain leave for this purpose.

It seems to me that where the law has carried the estate in the court, and we find a party in possession since the event, we are at liberty to presume that he is the agent and custodian of the court. The law presumes that every man in possession of property is there rightfully. It does not treat him as a trespasser or intermeddler of its own motion, and without proof.

It is said that no hardship can result from the admitting of the mortgagee into the possession, that he may be turned out at any time by the court. Why put him in, if the next day you may turn him out? "It has been argued," says

NELSON, J., " that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale, therefore, in such a case should be upheld. But conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court to abide the event of the litigation and to be applied to the payment of the judgment creditor. And in order to effect this, the court must administer it independently of any rights acquired by third persons, otherwise, the whole fund may have passed away out of its hands before the final decree." *Wiswall* v. *Sampson, supra.* It seems to me, that the idea of a mortgagee prosecuting an action of ejectment against property in the custody of the court, after it has been placed there by the bankrupt law, is at war with the whole spirit of that system. · If he gets possession, in what attitude does he stand ? He becomes accountable for the rents and profits. Shall he be permitted to stay there until they satisfy his claim ? And shall the closing up of the estate await that event ? Such a proceeding is anomalous and exceptional. I regret, then, that this court has committed itself to such a position. I believe, with C. J. MARSHALL, that the assignee was an indispensable party. I believed, with C. J. CHASE, that after the bankruptcy, no lien can be acquired or enforced against the bankrupt's estate. And I believe, with that distinguished and venerable·jurist, NELSON, who for so may years has shed light upon the law, that interference with property in the custody of the court, without its leave, is a contempt of the court.

With these men I am willing to err, if error it be called. I therefore vote to reverse this judgment, with directions to the court below to dismiss the proceedings.

*Affirmed.*